UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OLUKAYODE DAVID OJO and
OLATUNBOSUN GRACE OJO,

                Plaintiffs,

-against-

THOMAS DECKER, *et al.*,

                Defendants.

20-CV-3221 (LTS)

ORDER OF DISMISSAL

LAURA TAYLOR SWAIN, Chief United States District Judge:

        Plaintiff Olukayode David Ojo ("Ojo"), who is proceeding *pro se*, brings this action under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) and the Federal Tort Claims Act, 28 U.S.C. § 2671. On April 28, 2020, then-Chief Judge Colleen McMahon transferred the action to the United States District Court for the District of New Jersey because Ojo brought claims arising out of his detention at the Elizabeth Detention Center ("EDC"). (ECF 3.) The District of New Jersey opened a new civil action in that court, and Ojo filed an amended pleading, raising six different, unrelated claims. (*See* ECF 4-4.) On March 30, 2021, the District of New Jersey, under Fed. R. Civ. P. 21, severed those claims into six categories – (1) Essex County Correctional Facility claims; (2) EDC claims; (3) Hudson County Correctional Center claims; (4) Bergen County Jail claims; (5) Buffalo Federal Detention Facility ("BFDF") claims; and (6) immigration related claims ("immigration claims") – and then (1) directed Ojo to file four proposed complaints as to his New Jersey facility claims, (2) transferred the BFDF claims to the Northern District of New York, and (3) transferred the immigration claims to this District. Finally, the District of New Jersey denied as moot Ojo's claims seeking immediate release as he was no longer in custody. *See Ojo v. Decker*, No. 2:20-CV-5538, 14.

On June 15, 2021, after reviewing the District of New Jersey's transfer order, this Court granted Ojo leave to file a second amended complaint to assert any claims that arose in this District concerning his immigration proceedings. (ECF 6.) Ojo filed a second amended complaint, reasserting all of his claims that arose in New Jersey and Buffalo; he also added his wife, Olatunbosun Grace Ojo ("Ojo's wife"), as a plaintiff, who asserts claims that arose outside of this District. Ojo also appears to assert the immigration claims against Defendant Thomas Decker, the New York Field Office Director for the Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE).

As set forth below, the Court (1) dismisses Ojo's and his wife's claims against all of the defendants except Decker, without prejudice to their litigation of those claims in the District of New Jersey and the Northern District of New York; and (2) dismisses Ojo's immigration claims against Decker for failure to state a claim.

## BACKGROUND

The following facts are taken from the second amended complaint and concern only the claims that relate to events that occurred in this District. The Court also relies on publicly available records relating to Ojo's federal conviction and challenges to his detention.

On July 11, 2011, in Irvington, New Jersey, two agents with the Federal Bureau of Investigation arrested Ojo on charges of conspiracy to commit wire fraud and conspiracy to commit fraud in connection with identification documents. (ECF 7, at 12.) On February 27, 2014, the United States District Court for the Eastern District of New York – where Ojo was prosecuted – sentenced Ojo to 37 months' incarceration and $92,152 in restitution (*id.*), and entered judgment on February 28, 2014, *see United States v. Ojo*, No. 13-CR-0334, 75 (E.D.N.Y. Feb. 28, 2014). Ojo appealed the conviction to the United States Court of Appeals for the Second Circuit, *id.*, ECF 77, and the Second Circuit affirmed the conviction on November 19, 2015, *see*

*United States v. Ojo*, 630 F. App'x 83 (2d Cir. 2015). On March 21, 2016, the United States Supreme Court denied Ojo's petition for a writ of *certiorari*. *See Ojo v. United States*, 135 S. Ct. 1473 (2016).

Following Ojo's sentencing, the Federal Bureau of Prisons released Ojo on March 14, 2014, from the Metropolitan Detention Center in Brooklyn. (ECF 7, at 12.) On that same day, two ICE agents from the New York field office detained Ojo at the Orange County Jail, based on his having overstayed his visa in 2011, and on his Eastern District conviction. (*Id.* at 11, 12.) Ojo challenged ICE's determination that his conviction was final for immigration purposes, arguing that his appeal of his conviction was pending. (*Id.* at 13.) On May 7, 2014, an immigration judge granted Ojo's motion for release on bond, in the amount of $50,000, which Ojo could not afford. (*Id.*) The immigration judge reduced the bond amount further, to $22,500, but on October 24, 2014, the immigration judge denied Ojo's request for a further reduction. (*Id.*)

On December 19, 2014, after Ojo's transfer to the Hudson County Correctional Facility, which is located in New Jersey, Ojo filed a petition for a writ of *habeas corpus*, under 28 U.S.C. § 2241, in the District of New Jersey, seeking his release. *See Ojo v. Holder*, No. 2:14-CV-7951, 1 (D.N.J. June 11, 2018). On March 31, 2015, the parties agreed that the Department of Homeland Security ("DHS") would "stipulate to a redetermination of bond in Immigration Court to an amount that Mr. Ojo's family c[ould] afford," and that Ojo agreed to a dismissal of his Section 2241 petition under Fed. R. Civ. P. 41(a)(1). *Id.*, ECF 8.

On March 23, 2015, Ojo appeared in Immigration Court and argued against his removal. (ECF 7, at 15.) The immigration judge granted ICE's request for a continuance on the removal proceedings, until October 2015, and on April 7, 2015, the judge reduced Ojo's bond amount to $2,000; Ojo posted bond and was released from detention. (*Id.*)

Ojo remained released on bond until April 12, 2018, when he appeared in Immigration Court in Newark, New Jersey. (*Id.* at 17.) During an immigration hearing, Defendant Margo Strauss, an ICE Assistant Chief Counsel, served Ojo with a new notice to appear ("NTA") that included his Eastern District conviction. (*Id.*) The immigration judge "refused to sustain charges and instead directed the parties (Mr. Ojo and the Government) to file written briefs in support of their positions on or before August 24, 2018." (*Id.*) While Ojo waited in the courtroom for notice of the date of the next hearing, Defendants Ogoff and Bustos, two ICE agents from the New Jersey field office, took custody of Ojo and placed him in immigration detention, where he remained until December 10, 2020. (*Id.* at 17, 19.)

Following his detention, on May 3, 2018, Ojo filed in the District of New Jersey, a second petition for a writ of *habeas corpus* under Section 2241, where he argued that his immigration detention "amount[ed] to a violation of the joint stipulation of dismissal entered in his previous immigration habeas matter in March 2015." *Ojo v. Rodriguez*, No. 2:18-CV-8725, 16 (D.N.J. Apr. 5, 2019). The District of New Jersey, in denying Ojo's petition, noted that:

> [T]he joint stipulation of dismissal [in Ojo's prior Section 2241 petition] … did settle his previous habeas petition, [but] no part of that stipulation prevented the Government from taking Petitioner back into custody in the event of a change of circumstances. … Thus, that the Government took Petitioner back into custody as a factual matter does not directly contradict or breach the joint stipulation of dismissal entered in March 2015.

*Id.* at 4. In concluding that Petitioner's detention was lawful, the District of New Jersey also noted that Ojo "was taken into custody because he was newly charged with being removeable based on an aggravated felony conviction, which brought him within the ambit of [8 U.S.C.] § 1226(c)." *Id.* In an order denying Ojo's motion for reconsideration, the District of New Jersey noted that

> [i]t appears that Petitioner has expanded the contours of the joint stipulation and order of dismissal of a prior habeas petition that he entered into with the United

4

> States Attorney's Office for the District of New Jersey. … The underlying flaw in Petitioner's arguments … is that he incorrectly asserts that the aforementioned joint stipulation somehow rendered him invincible to any further immigration-related consequences as a result of his wire fraud conviction.

*Ojo*, No. 2:18-CV-8725, 42.

On December 10, 2020, Ojo was released from immigration custody – for reasons unclear from the District of New Jersey's records[1] – and currently resides in New Jersey. Ojo complied with the District of New Jersey's March 30, 2021 order, directing him to file four new complaints arising out of Ojo's detention in the New Jersey facilities, but those complaints were dismissed with leave to replead, based on Ojo's failure to comply with Fed. R. Civ. P. 8, as well as other deficiencies. *See Ojo v. Essex Cty.*, No. 2:21-CV-11357, 5 (D.N.J. Aug. 23, 2021).

Ojo now alleges, in his second amended complaint, that Decker failed to intervene in Ojo's two-year detention, from 2018 to 2020, after Ojo and the U.S. Government had agreed, in Ojo's first Section 2241 proceeding, that Ojo's bond amount would be reduced to an amount he could afford. He asserts that Decker violated his constitutional rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments, with respect to Ojo's detention in New Jersey and Buffalo.

## DISCUSSION

**A.    Claims that arose in the District of New Jersey and the Northern District of New York**

By order dated June 15, 2021, the Court directed Ojo to file a second amended complaint to assert claims that arose in this District. A review of the second amended complaint, however, shows that Ojo seeks to reassert claims that occurred outside of this District, claims that Ojo raised in the District of New Jersey and the Northern District of New York. Accordingly, the

---

[1] The filings after the denial of Ojo's motion for reconsideration are restricted and cannot be viewed by this Court.

Court dismisses these claims without prejudice to any pending litigation in those districts. Moreover, as Ojo's wife's claims arise out of events related to the New Jersey and Northern District claims, the Court also dismisses her claims without prejudice.

**B.     Claims brought against Decker**

The Court concludes that the only claim that arose in this District concerns DHS's role in Ojo's first detention, from 2014 to 2015, and Decker's alleged failure to intervene in Ojo's April 12, 2018 detention.

Because Ojo alleges that Decker, a federal employee, violated his constitutional rights, any claim against Decker would arise under *Bivens*. *See Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) ("[*Bivens*] is the federal analog to suits brought against state officials under [§ 1983].").

To state a claim for relief under *Bivens*, a plaintiff must allege facts that plausibly show that: (1) the challenged action was attributable to an officer acting under color of federal law, and (2) such conduct deprived him of a right, privilege, or immunity secured by the Constitution. *See Thomas v. Ashcroft*, 470 F.3d 491, 496 (2d Cir. 2006) (citing *Bivens*, 403 U.S. at 389). A plaintiff also must plead facts about the individual federal employee's personal involvement in violating a plaintiff's rights. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*.").

Liberally construing Ojo's second amended complaint, the Court concludes that Ojo seeks relief from Decker, for the treatment Ojo received during his two-year detention (commencing on April 12, 2018), based on Decker's alleged failure to intervene in Ojo's detention. This claim fails for two reasons. First, Ojo does not assert that Decker was involved personally in Ojo's first detention, where DHS agreed to Ojo's release on a substantially reduced bond in exchange for Ojo's agreeing to the dismissal of his first Section 2241 petition. Under

*Bivens*, a defendant may be liable only for his own personal conduct. *See Ashcroft*, 556 U.S. at 676.

Even assuming that Decker was involved personally, however, Plaintiff does not state facts suggesting that Decker – or any other federal official involved in Ojo's 2014 to 2015 detention – caused Plaintiff's alleged constitutional injuries during Ojo's detention from 2018 to 2020. Rather, the facts show that DHS took custody of Ojo pursuant to a new NTA that included the Eastern District conviction, which had become final on March 21, 2016, when the Supreme Court denied his application for a writ of *certiorari*. Whether this new basis for Ojo's detention was lawful was the subject of Ojo's second Section 2241 proceeding in the District of New Jersey – the prior stipulation between DHS and Ojo played no role in DHS's new detention. Thus, to the extent Ojo claims that his detention from 2018 to 2020 was unlawful, causing him to suffer constitutional harms in facilities located in New Jersey and the Northern District of New York, he cannot claim that Decker caused those harms. He therefore fails to state a claim under *Bivens* that Decker violated any of his constitutional rights.

## CONCLUSION

The Court dismisses (1) Ojo's and his wife's claims against all of the defendants except Decker, without prejudice to their litigation of those claims in the District of New Jersey and the Northern District of New York; and (2) Ojo's immigration claims against Decker for failure to state a claim.

The Court directs the Clerk of Court to mail a copy of this order to Plaintiff Olatunbosun Grace Ojo and note service on the docket. Plaintiff Olukayode David Ojo has consented to electronic service. (ECF 5.)

SO ORDERED.

Dated: October 13, 2021
New York, New York

                                                 /s/ Laura Taylor Swain
                                                 LAURA TAYLOR SWAIN
                                               Chief United States District Judge